IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRIAN MARK GIVENS                                                                              PLAINTIFF

V.                        CASE NO.: 1:19-CV-01026

EL DORADO FESTIVALS & EVENTS, INC.,
D/B/A MURPHY ARTS DISTRICT                                    DEFENDANT

## COMPLAINT

Comes the Plaintiff, Brian Mark Givens, through his attorney, David P. Price, and for his Complaint in this matter against the Defendant, now states:

1. This Court has jurisdiction of the parties to and the subject matter of this action. This matter is a federal cause of action, with pendant state claims.

2. Jurisdiction and venue are proper before this Court, pursuant to 42 U.S.C. §12101, et seq. more commonly referred to as the Americans with Disabilities Act of 1990, hereinafter referred to as (ADA).

3. Plaintiff, Brian Mark Givens, is a former resident of Dallas County, Arkansas. He now resides in Nashville, Tennessee, but at all times relevant in this matter, resided in the State of Arkansas.

4. El Dorado Festivals & Events, Inc. (hereinafter referred to as EFE, Inc.), does business as the Murphy Arts District. It is an Arkansas Corporation, authorized to do business in the State of Arkansas. Its registered agent for service of process is Pamela K. Griffin. She can be reached at 100 W. Cedar Street, Suite A, El Dorado, AR 71730.

1

5. This is a matter involving many interesting facts, which include the tired adage of, "Sex, drugs, and Rock 'n Roll."

## STATEMENT OF THE FACTS

6. In November of 2016, Plaintiff was hired by EFE, Inc. when he signed an agreement to become its Executive Vice-President of Entertainment and Talent Relations.

7. Plaintiff was recruited to come to work for EFE, Inc., both by Terry Stewart (Stewart), and R. Austin Barrow (Barrow). They were employed with EFE, Inc. in its daily operations at the time, and were agents of Defendant at all times relevant in this matter.

8. Stewart remains an employee of Defendant at this time. Barrow is no longer under its employ, however, during all times relevant in this matter, he was an employee and agent of Defendant.

9. In 2015, Stewart and Barrow began recruiting Plaintiff to come to work for EFE, Inc., when he was working as the Executive Director of *Main Street, El Dorado*.

10. Plaintiff is an alcoholic, suffering from alcoholism, which is a disease defined under the Americans with Disabilities Act of 1990 (ADA).

11. When Stewart and Barrow began recruiting Plaintiff to come to work for EFE, Inc., they knew that he was an alcoholic. Stewart and Barrow told Plaintiff that as a condition precedent, before he would be hired by EFE, Inc., he would have to enroll into meaningful treatment for his alcoholism.

12. Thereafter, while Plaintiff was still employed with *Main Street, El Dorado*, he began treatment for his alcoholism, on an outpatient basis at Ouachita County Medical Center (OCMC), at its alcohol rehabilitation and detoxification unit.

13. When Plaintiff finished his treatment, he decided to remain with his employ at *Main Street, El Dorado*. EFE, Inc. was still behind in its construction of its Griffin Music Hall and Murphy Amphitheatre, and other venues, located in downtown El Dorado. EFE, Inc. would not need Plaintiff's services until sometime in 2016, however, both Stewart and Barrow stayed in contact with Plaintiff on a regular basis.

14. Finally, after being recruited by both Stewart and Barrow, on a continuing basis, Plaintiff signed a formal offer to become employed with EFE, Inc. in November of 2016, as its Executive Vice-President of Entertainment and Talent Relations.

15. Almost from the start, when Plaintiff became employed with EFE, Inc., he was introduced to an environment where rules did not apply to Stewart, Barrow, and Dan Smith, who also was an executive with EFE, Inc. All of them had an attitude of absolute entitlement, and of being above the law.

16. Plaintiff was salaried, making an annual income in excess of six figures, with benefits. He was expected to be at every performance at the Griffin Music Hall and Murphy Amphitheatre from beginning to end, and was an eyewitness to many things throughout his tenure at EFE, Inc.

17. Throughout Plaintiff's employment with EFE, Inc., Stewart, Barrow and other employees regularly consumed illegal drugs at every EFE, Inc. sponsored event. At the EFE, Inc. office, marijuana was freely delivered and passed around.

18. Plaintiff enjoyed his job, and the constant adrenaline rush that came from doing good work for EFE, Inc.

19. EFE, Inc. recruits entertainment for its multi-million dollar facility and ongoing concern in El Dorado. As part of his job, Plaintiff co-hosted events in El Dorado, alongside Stewart and Barrow, several nights a week, on a regular basis.

20. Stewart and Barrow knew at all times that Plaintiff was an alcoholic. However, they put him in an environment where drinking alcohol was the norm and not the exception.

21. When Plaintiff made attempts to abstain, he was unduly pressured by Stewart and Barrow to drink with them. They always offered him alcohol prior to, during, and after events.

22. Plaintiff's problem began to worsen during this time, however, Stewart and Barrow continued to offer him drinks at all EFE, Inc., events. Plaintiff's disease only worsened, and he did not realize it.

23. Stewart was duplicitous in his actions with Plaintiff. For example, Stewart would berate and pressure Plaintiff to drink alcohol and entertain patrons and entertainers at EFE, Inc. events. Then, the next day at the office, Stewart would berate Plaintiff, calling him drunk and sloppy, constantly mentioning to Plaintiff that he had a weight problem, and calling him undisciplined. Stewart's conduct only made Plaintiff's disease worse.

24. Barrow, while not as vocal as Stewart, was direct with insisting that Plaintiff drink alcohol at EFE, Inc. events, when it was provided.

25. In addition, marijuana use was rampant at EFE, Inc. Plaintiff was provided marijuana frequently at EFE, Inc. events, by its executives. Impaired by the marijuana, Plaintiff would then drink more alcohol, which worsened his disease and overall health. It was a dangerous cycle for Plaintiff.

26. As part of the lawless attitude of entitlement under Stewart, Barrow, and Dan Smith, a young teenaged waitress was sexually assaulted at the Griffin restaurant by a former

EFE, Inc. employee. The assault of the young woman by the former EFE, Inc. employee sent shock waves throughout EFE, Inc. The vile act was kept quiet by Stewart and Barrow, and quickly settled. Dan Smith's employment with EFE, Inc. abruptly ended thereafter.

27. When Plaintiff heard about what had occurred and complained about it to Stewart, he was told to be quiet; that the matter had been "handled," and was, "not his concern."

28. Stewart knew from the beginning when he began recruiting Plaintiff to come to work for EFE, Inc., that Plaintiff was an alcoholic.

29. Barrow knew Plaintiff and his former wife before Plaintiff became employed with EFE, Inc. At one time, Plaintiff considered Barrow a friend. Barrow knew of Plaintiff's alcoholism well before he was hired by EFE, Inc.

30. On September 12, 2018, Plaintiff was part of a group that had entertained clients and patrons after a show. In particular, large amounts of alcohol were consumed that day and evening by Plaintiff and other employees of EFE, Inc. It was a job requirement.

31. The next day, on September 13, 2018, while at work, Plaintiff was given marijuana by an EFE, Inc., employee, which he smoked. He consumed alcohol that day, while in the employ of EFE, Inc. It was all in a day's work.

32. Later that same day, on September 13, 2018, while under the influence of marijuana and alcohol, Plaintiff had a "black out" episode, which as of this filing, he does not remember.

33. On September 18, 2018, Plaintiff spoke with Barrow, and told Barrow that he was making plans to check into rehabilitation treatment for his alcoholism. Plaintiff told Barrow that he had to get some things in order, and would check into treatment on September 20, 2018.

34. During their conversation on September 18, 2018, Barrow told Plaintiff that he needed to retrieve a company laptop computer from him, since contacts for the upcoming *Musicfest El Dorado*, which was sponsored by EFE, Inc., were on it.

35. During their conversation on September 18, 2018, Plaintiff asked Barrow if he also needed Plaintiff's cellular telephone. Barrow told him that he did not, and that Plaintiff could keep it.

36. During their conversation on September 18, 2018, Barrow gave Plaintiff his blessing in regard to Plaintiff's decision to undergo alcohol treatment. At no time during their conversation was Plaintiff told that his employment with EFE, Inc. was terminated.

37. On September 20, 2018, Plaintiff checked into the Ouachita County Medical Center (OCMC) for intensive "in-patient" treatment for his disease of alcoholism.

38. The following week, while Plaintiff was in therapy, he was informed by his now former wife, that Barrow told her, *"Mark is fucking fired; and tell him we are keeping his cell phone number."*

39. As of the filing of this cause of action, Plaintiff has yet to be told that his employment with EFE, Inc. has been terminated. He has not been notified either in writing, or expressly told, that his employment with Defendant is over.

40. News to Plaintiff of his termination from EFE, Inc. was delivered to him from his now former wife, while he was hospitalized for treatment for his alcoholism.

41. Plaintiff understands, and it is obvious to him, that he has been constructively discharged from his employment. This occurred while he was hospitalized for alcohol rehabilitation treatment, in violation of Federal and State law.

42. Plaintiff, as stated above, is an alcoholic. Alcoholism is a defined disease under Chapter 4 of the ADA. It is a violation of the ADA to terminate a person from their employment while that person is being treated on an *in-patient* basis for alcoholism.

43. All of the actions of Stewart and Barrow, set forth hereinabove, are imputed to EFE, Inc., as a matter of law, under the doctrine of *respondeat superior*.

## CAUSES OF ACTION

44. Plaintiff filed his Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission on March 7, 2019. A copy of said document is attached hereto as "Exhibit 1" to this Complaint.

45. Plaintiff received his right to sue letter on March 13, 2019. A copy of said document is attached hereto as "Exhibit 2" to this Complaint.

46. Plaintiff is entitled to judgment against Defendant for violation of the Americans with Disabilities Act of 1990 (ADA).

47. Plaintiff is entitled to judgment against Defendant under Arkansas law, pursuant to *Sterling Drug v. Oxford, (1998),* as the actions of EFE, Inc., are in violation of the public policy of the State of Arkansas, which is found in its statutes and laws. This includes, but is not limited to, violation of the Arkansas Civil Rights Act. This includes, but is not limited to, possession and distribution by employees of Defendant to Plaintiff, multiple illegal and controlled substances at the workplace, in violation of the criminal statutes of the State of Arkansas.

48. Plaintiff demands a trial by jury on all issues of fact.

## *PRAYER FOR RELIEF*

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for judgment against EFE, Inc., in excess of that required for federal diversity of citizenship matters in federal court, for attorney's fees, court costs, punitive damages, and all other relief that he is entitled to as a matter of law.

Respectfully Submitted,

Brian Mark Givens, Plaintiff

BY: /s/ David P. Price
David P. Price, ABN: 92121
Attorney for Plaintiff
P.O. Box 765
Magnolia, AR 71754-0765
(870) 234-4781
office@dpplaw.com